FILED
CLERK, U.S. DISTRICT COURT

8/20/25

CENTRAL DISTRICT OF CALIFORNIA
BY: _____MRV_____ DEPUTY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

June 2025 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>DAVID RAYMOND BROWN,<br>  fka "David Brown Levy,"<br>  fka "David Addison Brown,"<br><br>Defendant. | CR 2:25-cr-00691-AB<br><br>I N D I C T M E N T<br><br>[18 U.S.C. § 1343: Wire Fraud; 18 U.S.C. § 1957: Transactional Money Laundering; 18 U.S.C. § 1028A: Aggravated Identity Theft; 18 U.S.C. §§ 981(a)(1)(C), 982; 28 U.S.C. § 2461(c): Criminal Forfeiture] |

The Grand Jury charges:

COUNTS ONE THROUGH NINE

[18 U.S.C. § 1343]

A.   INTRODUCTORY ALLEGATIONS

1.   At times relevant to this Indictment:

a.   Defendant DAVID RAYMOND BROWN, formerly known as "David Brown Levy" and "David Addison Brown," worked in the film industry in various roles, including as a producer, unit production manager, and production accountant.  Defendant BROWN was a resident of Sherman Oaks, California, and West Columbia, South Carolina.

1          b.    Defendant BROWN worked on various independent film

2    projects and owed a fiduciary duty to the production companies for

3    those projects (the "Film Production Companies").

4          c.    Defendant BROWN agreed to coinvest in real estate with

5    Victim 1, a resident of the Central District of California, and to

6    whom defendant BROWN owed a fiduciary duty.

7          d.    Along with Victim 2, to whom he owed a fiduciary duty,

8    defendant BROWN was a member and manager of Film Holdings Capital

9    LLC, a California Limited Liability Company until March 26, 2024,

10   when defendant BROWN filed a "Statement of Information" with the

11   California Secretary of State changing the manager and member of Film

12   Holdings Capital to "Film Holdings Fund Partners LLC," a limited

13   liability company that defendant BROWN controlled.

14         e.    ScreenFund LLC and The Screen Company, Inc. were,

15   respectively, a Delaware limited liability company and Delaware

16   corporation that defendant BROWN organized and operated.

17         f.    Hollywood Covid Testing LLC was a California

18   corporation organized and operated by defendant BROWN.

19         g.    "Untitled SLA" was the working title for a film

20   project relating to the kidnapping and indoctrination of Patty Hearst

21   by the Symbionese Liberation Army for which defendant BROWN was the

22   producer.  Defendant BROWN controlled Untitled SLA LLC and SLA Film

23   LLC, two California limited liability companies related to the

24   project.

25         h.    CASHét Card, LLC was a California limited liability

26   company that provided prepaid debit cards and customized accounting

27   software for use in film and television productions.  A film

28   production that opened an account with CASHét Card would receive

                                    2

1  individual debit cards with users and spending limits that could be

2  customized by the accountholder.  CASHét Card's card issuer payment

3  processor was Comdata Inc., which was headquartered in Brentwood,

4  Tennessee.  Defendant BROWN maintained a CASHét Card account in the

5  name of "DB Film LLC" (the "DB Film CASHét Card Account"), which

6  included subaccounts for "Untitled SLA" (the "Untitled SLA CASHét

7  Card Account") and Digital Diffusion LLC (the "Digital Diffusion LLC

8  CASHét Card Account"), among others.

9            i.   Stripe was a software platform that processed credit

10 and debit card payments for businesses, including transferring funds

11 into bank accounts.

12           j.   Defendant BROWN maintained and controlled accounts at

13 various financial institutions, whose accounts were insured by the

14 Federal Deposit Insurance Corporation, including:

15           i.   Two accounts in the name of "David Brown Living

16 Trust" at JPMorgan Chase Bank, one ending -0175 ("Living Trust

17 Account -0175") and the other ending -2315 ("Living Trust Account -

18 2315"); and

19           ii.  Two accounts in the name of "Screen Company Inc"

20 at Western Alliance Bank, one ending -0258 ("Screen Company Account -

21 0258") and the other ending -6159 ("Screen Company Account -6159").

22           k.   For one of the Film Production Companies ("Film

23 Production Company 1"), defendant BROWN was authorized to request

24 wire payments to be made from Film Production Company 1's bank

25 account at First Republic Bank (the "First Republic Account") for the

26 purpose of paying production expenses.

27

28

1    B.    THE SCHEME TO DEFRAUD

2         2.    Beginning no later than in or about December 2021, and

3    continuing through at least in or about August 2025, in Los Angeles

4    County, within the Central District of California, and elsewhere,

5    defendant BROWN, along with others known and unknown to the Grand

6    Jury, knowingly and with the intent to defraud, devised, participated

7    in, and executed a scheme to defraud the Film Production Companies,

8    Victim 1, Victim 2, and others as to material matters, and to obtain

9    money and property by means of material false and fraudulent

10   pretenses, representations, promises, and the concealment of material

11   facts.

12        3.    The scheme to defraud operated, in substance, as follows:

13             a.    Without the knowledge or authorization of the Film

14   Production Companies, defendant BROWN misappropriated funds belonging

15   to the Film Production Companies by causing funds to be transferred

16   from the Film Production Companies' bank and CASHét Card accounts to

17   bank and CASHét Card accounts he controlled.

18             b.    To create the false impression that the

19   misappropriated funds were to be used for legitimate production

20   expenses, defendant BROWN caused the Film Production Companies to

21   make payments to Hollywood Covid Testing for services never rendered

22   or already paid for, including through the use of false or duplicate

23   invoices.

24             c.    Defendant BROWN represented to Victim 1 that he would

25   pool funds with him to make real estate investments as part of a

26   house flipping business.  In reality, defendant BROWN contributed

27   minimal funds himself and misappropriated a portion of the funds from

28   Victim 1 to maintain his lifestyle.

1          d.   Defendant BROWN represented to Victim 2 that they

2     would both contribute funds to capitalize Film Holdings Capital,

3     which funds would then be used to provide bridge loans and other

4     financing to film projects, with defendant BROWN and Victim 2

5     realizing returns proportionate to their contributions.  In reality,

6     defendant BROWN contributed minimal funds to Film Holdings Capital

7     and, without the knowledge or authorization of Victim 2, spent a

8     substantial portion of Victim 2's contributions on maintaining his

9     lifestyle and repaying prior victims, including the Film Production

10    Companies and Victim 1.

11         e.   To inflate his curriculum vitae and credibility in the

12    film industry, and to induce Victim 2 to provide him funds, defendant

13    BROWN provided Victim 2 a copy of another individual's IMDb profile,

14    which defendant BROWN represented to be his own.

15         f.   To ensure they would not be discouraged from doing

16    business with him, defendant BROWN concealed from Victims 1 and 2:

17              i.   His lengthy prior history of fraud, including an

18    article in the Los Angeles Times detailing numerous fraud accusations

19    that had been made against him; and

20              ii.  Numerous civil lawsuits that had been filed

21    against him alleging fraud.

22         g.   Rather than use the misappropriated funds for their

23    intended purpose, such as real estate investments or to finance film

24    productions, defendant BROWN used the funds to finance his lifestyle

25    and that of his spouse, including:

26              i.   The purchase of a 2025 Mercedes Benz G-Wagon and

27    various Tesla vehicles, including a 2024 Cybertruck, a 2024 Model X,

28    and a 2025 Model Y;

1          ii.   Mortgage payments on defendant BROWN's personal

2     residence as well as remodeling work, including approximately $99,000

3     for the installation of a pool and more than $16,000 for a Subzero

4     refrigerator;

5          iii. The purchase of a house for defendant BROWN's

6     mother;

7          iv.   Payments to family members, including defendant

8     BROWN's sister and mother-in-law;

9          v.    More than $70,000 on surrogacy and related

10    services;

11         vi.   Private school tuition; and

12         vii. Approximately $970,263 in payments pertaining to

13    the Untitled SLA film project.

14        h.    To maintain and conceal his scheme, and to discourage

15    his victims and others from communicating and cooperating with law

16    enforcement, defendant BROWN:

17         i.    Repaid Film Production Companies he had

18    victimized by using funds he obtained from new victims, including

19    Victim 2;

20         ii.   Claimed, in connection with civil litigation,

21    that he would compensate one victimized Film Production Company but

22    intentionally submitted checks drawn on insufficient funds; and

23         iii.  Instructed a party that had received from law

24    enforcement a subpoena for records that the party could either send

25    the requested documents or "throw away" the subpoena.

26        i.    To conceal his scheme, defendant BROWN falsely

27    informed representatives of CASHét Card that he had been directed by

28

1   the U.S. Securities and Exchange Commission to freeze the funds of an

2   investor in one of the Film Production Companies.

3            j.    To create the false impression that he had not

4   misspent Victim 2's funds and that Film Holdings Capital was

5   appropriately operating a film finance business, defendant BROWN:

6            i.    Tricked and fraudulently induced a third party

7   into signing backdated loan documents;

8            ii.   Enticed Film Production Companies to complete

9   loan agreement documents with no intention of funding the loans;

10           iii. Misrepresented that he had millions of dollars in

11  an "overhead account" to provide financing when, in reality, these

12  funds reflected funds obtained from other victims, including Victim

13  2;

14           iv.   Represented that he had assigned a 2021 loan to

15  Film Holdings Capital LLC and ScreenFund LLC, and that the loan,

16  which was originally for $339,071.45, was now worth more than $13.6

17  million, when, in reality, defendant BROWN had represented in 2021

18  that he had assumed it himself; and

19           v.    Withheld purported health insurance payments from

20  employees' payroll while failing to maintain employees' health

21  insurance coverage.

22      4.   As a result of his scheme to defraud, defendant BROWN owes

23  his victims collectively more than $12 million.

24  C.   USE OF INTERSTATE WIRES

25      5.   On or about the following dates, in Los Angeles County,

26  within the Central District of California, and elsewhere, for the

27  purpose of executing the scheme to defraud described above, defendant

28

BROWN transmitted and caused the transmission of the following items

by means of wire communications in interstate commerce:

| COUNT | DATE | ITEM TRANSMITTED BY WIRE |
|-------|------|--------------------------|
| ONE | 12/08/2021 | Email from defendant BROWN stating that another individual "is not liable for this debt.  I've assumed it on behalf of Flesh 2021 LLC." |
| TWO | 03/22/2022 | $5,000 charge to defendant BROWN's Digital Diffusion LLC CASHét Card Account |
| THREE | 04/21/2022 | Email from defendant BROWN attaching a $15,000 invoice from Hollywood Covid Testing |
| FOUR | 09/13/2022 | Payment of $35,257.95 from the DB Film CASHét Card Account for HVAC services |
| FIVE | 09/22/2022 | Wire transfer of $50,000 from the First Republic Account to Comdata on behalf of the Untitled SLA CASHét Card Account |
| SIX | 09/27/2022 | Wire transfer of $50,000 from the First Republic Account to Comdata on behalf of the Untitled SLA CASHét Card Account |
| SEVEN | 03/04/2024 | Email from defendant BROWN stating "I own both Untitled SLA LLC and Film Holdings Capital LLC 100%" |
| EIGHT | 05/06/2024 | Text message from defendant BROWN stating "Sitting on $4,293,040 in my overhead account.  So, we don't need to get any of our LP partners to fund this." |
| NINE | 11/21/2024 | Email from B.B. to defendant BROWN and others stating, among other things, "Please see attached for the executed documents from our side.  If you can please countersign accordingly and scan back to us that would be great.  I believe that should finalize everything. Please see below for our wiring instructions." |

COUNTS TEN THROUGH NINETEEN

[18 U.S.C. § 1957]

6.    The Grand Jury realleges paragraphs 1 through 5 of this Indictment here.

7.    On or about the dates set forth below, in Los Angeles County, within the Central District of California, and elsewhere, defendant BROWN, knowing that the property involved represented the proceeds of some form of unlawful activity, knowingly engaged in the following monetary transactions in criminally derived property of a value greater than $10,000, which property, in fact, was derived from specified unlawful activity, namely, wire fraud, in violation of Title 18, United States Code, Section 1343:

| COUNT | DATE | MONETARY TRANSACTION |
|-------|------|----------------------|
| TEN | 03/05/2024 | Wire payment of $15,000 from Living Trust Account -2315 to attorney J.P.K. |
| ELEVEN | 03/05/2024 | Wire payment of $28,500 from Living Trust Account -2315 to Victim 1 |
| TWELVE | 04/25/2024 | Wire payment of $25,000 from Living Trust Account -2315 to attorney J.P.K. |
| THIRTEEN | 08/12/2024 | Wire payment of $20,000 from Living Trust Account -2315 to law firm T.G. |
| FOURTEEN | 11/19/2024 | Wire payment of $30,000 from Screen Company Account -0258 to M.C.R. |
| FIFTEEN | 12/10/2024 | Wire payment of $20,000 from Living Trust Account -0175 to Victim 1 |
| SIXTEEN | 12/10/2024 | Wire payment of $20,000 from Screen Company Account -6159 to M.C.R. |
| SEVENTEEN | 12/20/2024 | Wire payment of $50,000 from Living Trust Account -0175 to Victim 1 |
| EIGHTEEN | 12/23/2024 | Wire payment of $75,000 from Living Trust Account -0175 to Victim 1 |
| NINETEEN | 12/23/2024 | Wire payment of $42,000 from Living Trust Account -0175 to C.M. |

COUNT TWENTY

[18 U.S.C. § 1028A]

8.    The Grand Jury realleges paragraphs 1 through 5 of this Indictment here.

9.    On or about March 4, 2024, in Los Angeles County, within the Central District of California, and elsewhere, defendant BROWN knowingly possessed, transferred, and used, without lawful authority, a means of identification that defendant BROWN knew belonged to another person, that is, the name of victim D.B., during and in relation to the offense of Wire Fraud, a felony violation of Title 18, United States Code, Section 1343, as charged in Count Eight of this Indictment.

1                         COUNT TWENTY-ONE

2                         [18 U.S.C. § 1028A]

3       10.   The Grand Jury realleges paragraphs 1 through 5 of this

4  Indictment here.

5       11.   On or about May 6, 2024, in Los Angeles County, within the

6  Central District of California, and elsewhere, defendant BROWN

7  knowingly possessed, transferred, and used, without lawful authority,

8  a means of identification that defendant BROWN knew belonged to

9  another person, that is, the name of victim D.B., during and in

10  relation to the offense of Wire Fraud, a felony violation of Title

11  18, United States Code, Section 1343, as charged in Count Nine of

12  this Indictment.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FORFEITURE ALLEGATION ONE

[18 U.S.C. § 981(a)(1)(C); 28 U.S.C. § 2461(c)]

12.  Pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), in the event of the conviction of defendant DAVID RAYMOND BROWN, formerly known as "David Brown Levy" and "David Addison Brown," on any of the offenses set forth in Counts One through Nine of this Indictment.

13.  Defendant BROWN, if so convicted, shall forfeit to the United States of America the following:

a.  All right, title, and interest in any and all property, real or personal, constituting, or derived from, any proceeds traceable to the offenses; and

b.  To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraph (a).

14.  Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), defendant BROWN, if so convicted, shall forfeit substitute property, up to the value of the property described in the preceding paragraph if, as the result of any act or omission of defendant BROWN, the property described in the preceding paragraph or any portion thereof (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been

substantially diminished in value; or (e) has been commingled with

other property that cannot be divided without difficulty.

1                    FORFEITURE ALLEGATION TWO

2                        [18 U.S.C. § 982]

3       15.   Pursuant to Rule 32.2(a) of the Federal Rules of Criminal

4  Procedure, notice is hereby given that the United States will seek

5  forfeiture as part of any sentence, pursuant to Title 18, United

6  States Code, Section 982(a)(1) in the event of the conviction of

7  defendant DAVID RAYMOND BROWN, formerly known as "David Brown Levy"

8  and "David Addison Brown," of any of the offenses set forth in Counts

9  Ten through Nineteen of this Indictment.

10      16.   Defendant BROWN, if so convicted, shall forfeit to the

11 United States of America the following:

12           a.   Any property, real or personal, involved in such

13 offense, and any property traceable to such property; and

14           b.   To the extent such property is not available for

15 forfeiture, a sum of money equal to the total value of the property

16 described in subparagraph (a).

17      17.   Pursuant to Title 21, United States Code, Section 853(p),

18 as incorporated by Title 18, United States Code, Section 982(b)(1),

19 and Title 18, United States Code, Section 982(b)(2), defendant BROWN,

20 if so convicted, shall forfeit substitute property, if, by any act or

21 omission of defendant BROWN, the property described in the preceding

22 paragraph, or any portion thereof: (a) cannot be located upon the

23 exercise of due diligence; (b) has been transferred, sold to, or

24 deposited with a third party; (c) has been placed beyond the

25 jurisdiction of the court; (d) has been substantially diminished in

26 value; or (e) has been commingled with other property that cannot be

27 divided without difficulty.  Substitution of assets shall not be

28 ordered, however, where the defendant BROWN acted merely as an

                               14

1  intermediary who handled but did not retain the property in the

2  course of the money laundering offense unless defendant BROWN, in

3  committing the offense or offenses giving rise to the forfeiture,

4  conducted three or more separate transactions involving a total of

5  $100,000.00 or more in any twelve-month period.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1                  FORFEITURE ALLEGATION THREE

2                    [18 U.S.C. §§ 982, 1028]

3       18.   Pursuant to Rule 32.2 of the Federal Rules of Criminal

4  Procedure, notice is hereby given that the United States of America

5  will seek forfeiture as part of any sentence, pursuant to Title 18,

6  United States Code, Sections 982 and 1028, in the conviction of

7  defendant DAVID RAYMOND BROWN, formerly known as "David Brown Levy"

8  and "David Addison Brown," of the offenses set forth in Counts Twenty

9  or Twenty-One of this Indictment.

10      19.   Defendant BROWN, if so convicted, shall forfeit to the

11 United States of America the following:

12          a.   All right, title and interest in any and all property,

13 real or personal, constituting, or derived from, any proceeds

14 obtained, directly or indirectly, as a result of the offense;

15          b.   Any personal property used or intended to be used to

16 commit the offense; and

17          c.   To the extent such property is not available for

18 forfeiture, a sum of money equal to the total value of the property

19 described in subparagraphs (a) and (b).

20      20.   Pursuant to Title 21, United States Code, Section 853(p),

21 as incorporated by Title 18, United States Code, Sections 982(b) and

22 1028(g), defendant BROWN, if so convicted, shall forfeit substitute

23 property, up to the total value of the property described in the

24 preceding paragraph if, as the result of any act or omission of

25 defendant BROWN, the property described in the preceding paragraph,

26 or any portion thereof: (a) cannot be located upon the exercise of

27 due diligence; (b) has been transferred, sold to or deposited with a

28 third party; (c) has been placed beyond the jurisdiction of the

                              16

1  court; (d) has been substantially diminished in value; or (e) has

2  been commingled with other property that cannot be divided without

3  difficulty.

4                                      A TRUE BILL

5

6                                      /S/
                                       Foreperson
7

8  BILAL A. ESSAYLI
   Acting United States Attorney
9

10  *Christina Shay*

11  CHRISTINA T. SHAY
    Assistant United States Attorney
12  Chief, Criminal Division

13  ALEXANDER B. SCHWAB
    Assistant United States Attorney
14  Deputy Chief, Criminal Division

15  JOSHUA O. MAUSNER
    Assistant United States Attorney
16  Terrorism and Export Crimes Section

17

18

19

20

21

22

23

24

25

26

27

28

17